UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RYAN SCOTT SMITH,

                                                23-CV-6533-FPG

v.

                                                DECISION & ORDER

SGT. DAVID WEAVER, ET AL.

                                           Defendants.

## INTRODUCTION

*Pro se* Plaintiff Ryan Scott Smith brings this action against Defendants Sgt. David Weaver, Lt. Aaron Liver Good, and Officers Scott Mendola, Steven Latona, Jeffery Shawver, Marvin Tooke, Scott Smith, and William Staley. ECF Nos. 1, 25. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 and claims pursuant to New York State law. *Id.* Defendants move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 41. For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions or opinions couched as factual

1

allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quoting *United States v. Bonanno Organized Crime Family of La Cosa Nostra,* 879 F.2d 20, 27 (2d Cir.1989)).

For purposes of a motion to dismiss, a complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). The Court may also review any "documents that the plaintiff[] either possessed or knew about and upon which [he] relied in bringing the [action]." *Id.*

A plaintiff's failure to oppose a motion to dismiss "is not by itself fatal to his case," *D'Andrea v. Monroe Cnty.*, 602 F. Supp. 3d 428, 430 (W.D.N.Y. 2022), for "[i]f a complaint is sufficient to state a claim upon which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000).

## BACKGROUND

In his complaint, Plaintiff alleges that on April 3, 2023, while he was incarcerated at the Niagara County Jail, Shawver made a "false phone call" to Liver Good in which he falsely accused Plaintiff of smoking. ECF No. 25 at 7. In response, the CERT Team[1] entered Pod-2, and approached Plaintiff at his cell, which was located on the mezzanine. *Id.* Plaintiff asked Mendola to smell his cell for smoke, but Mendola responded that he could not because his nose was stuffed. *Id.* Liver Good, Weaver, and an officer then approached Plaintiff, who was by his cell. *Id.* Plaintiff asked Liver Good to smell his cell for smoke, but Liver Good also responded that his nose was stuffed. *Id.*

---

[1] Plaintiff refers to the "ERT Team," while Defendants in their motion to dismiss (ECF No. 42) and in their *Valentin* letter (ECF No. 19), refer to it as "CERT Team Members." Thus, the Court will refer to it as the CERT Team.

Weaver then told one of the officers to handcuff Plaintiff. *Id.* Plaintiff handed the books he was holding to Mendola. *Id.* As Plaintiff placed his hands in front of him, an officer on his left side who was standing with Weaver grabbed Plaintiff's hand "excessively." *Id.* Out of fear, Plaintiff went to the ground. *Id.* As Plaintiff went to the ground, Liver Good yelled out, "Mace him!" *Id.* Plaintiff alleges that at this point he was not resisting. *Id.* As Plaintiff lay flat on the ground, Liver Good proceeded to pepper spray Plaintiff "directly in [his] eyes and face." *Id.* Liver Good also "placed his full body weight on [Plaintiff's] neck and head." *Id.* After Liver Good pepper sprayed Plaintiff, Officers proceeded to bend his legs, feet, arms, and wrist "excessively." *Id.* Plaintiff believed the officers were "attempt[ing] to break [his legs, feet, arms, and wrist]." *Id.* at 12. While Plaintiff lay on the floor not resisting, members of the CERT Team punched him "multiple times over and over in [his] ribs." *Id.* at 7.

Members of the CERT Team "excessive[ly]" placed Plaintiff in "full body restraints" and handcuffed him behind his back. *Id.* Almost immediately after being placed into handcuffs, Plaintiff's hand went numb. *Id.* By the time the full-body restraints were removed, he was missing skin and his wrists were bloody. *Id* at 7-8. While members of the CERT Team "beat [Plaintiff] and excessively placed [him] in full body restraints," Weaver and Liver Good watched. *Id.* at 8. Additionally, while Liver Good pepper sprayed Plaintiff in the face and eyes, Weaver watched. *Id.* at 7-8. Plaintiff also alleges other officers were present at this time. *Id.* at 7.

As a result of the incident, Plaintiff suffered from "bad headaches for a long period of time," lacerations to his arms, "[b]lurry vision for months" from the pepper spray "directly into his eyes," knee pain, and scarring on his legs from when the officers bent and pushed them into the floor. *Id.* at 10. He needed mental health treatment and medication due to ongoing nightmares he experienced after the incident. *Id.* He would have nightmares of being assaulted and would

wake up in cold sweats. *Id.* at 13. Following the incident, Plaintiff had a mental breakdown, went into a "dark place," and wanted to kill himself. *Id.* at 10. Plaintiff did not eat for "three or four days," lost ten to fifteen pounds, and continues to have nightmares and fear of authority. *Id.*

On September 18, 2023, Plaintiff brought the instant action in this Court. ECF No. 1. After screening Plaintiff's first and amended complaints pursuant to 28 U.S.C. § 1915A, this Court found Plaintiff's failure to intervene and infliction of emotional distress claims sufficient to proceed to service against Weaver, Liver Good, Mendola, Latona, Shawver, Tooke, Smith, and Staley. ECF No. 26 at 3. Additionally, the Court found Plaintiff's claims for excessive force, assault, and battery sufficient to proceed to service against Liver Good, Tooke, Smith, and Staley. *Id.* Defendants now move to dismiss Plaintiff's amended complaint.[2] ECF No. 41. Plaintiff never filed a response in opposition to Defendants' motion to dismiss.

## DISCUSSION

Defendants move to dismiss Plaintiff's claims pursuant to Rule 12(b)(6). ECF No. 41. They argue that (1) Plaintiff's New York state law claims should be dismissed because Plaintiff filed a late notice of claim; (2) Plaintiff failed to exhaust his administrative remedies, necessitating dismissal of all claims; (3) Plaintiff failed to state a claim against the Defendants for the claims of excessive force and failure to intervene; and (4) Defendants are entitled to qualified immunity, and thus cannot be held liable. ECF No. 42.

### A. Timeliness of Notice of Claims for State Claims

Plaintiff asserts state law claims for assault and battery against Liver Good, Tooke, Smith, and Staley, and emotional distress claims against Weaver, Liver Good, Mendola, Latona, Shawver, and Took. ECF No. 25. These Defendants argue that the state law claims must be dismissed

---

[2] Defendant filed a "Corrected" Memorandum of Law (ECF No. 42), which the Court deems to have replaced the original Memorandum of Law (ECF No. 41-4).

because Plaintiff failed to comply with New York's Notice of Claim requirements. ECF No. 42 at 16-17. Specifically, they argue that Plaintiff served Niagara County with an untimely notice of claim on December 14, 2023, which was about five months after the deadline had passed, and thus, the state law claims must be dismissed. *Id.* at 17. The Court agrees.

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. New York City Health & Hosp., Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (emphasis omitted); *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 1991) ("In applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim."). "A plaintiff bringing tort claims against a municipality or its agent must plead 'that (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim.'" *Ransom v. Banks*, No. 20-CV-10232 (MKV), 2022 WL 769344, at *7 (S.D.N.Y. Mar. 14, 2022) (quoting *Hardy*, 164 F.3d at 793); *see* N.Y. Gen. Mun. L. §§ 50-e(1), 50-i(1). "Notice of Claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action." *Am. Tel. & Tel. Co. v. New York City Dep't of Hum. Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (collecting cases). The plaintiff has the burden to show that he complied with the notice of claim requirements. *Wheeler v. City of Middletown*, No. 16 CV 8857, 2021 WL 2206490, at *9 (S.D.N.Y. June 1, 2021).

Here, since Plaintiff asserted state law claims for assault, battery, and infliction of emotional distress from an incident on April 3, 2023, he would have needed to plead that he filed a notice of claim within 90 days from that date, which in this case would have been July 3, 2023.[3]

---

[3] Under Fed. R. Civ. P. 6(a)(1)(c), if a filing deadline lands on a weekend or legal holiday, the party has until the following day that does not land on a weekend or legal holiday to file. Because 90 days from April 3, 2023 was Sunday, July 2, 2023, a weekend, Plaintiff's notice of claim was due July 3, 2023.

*See* N.Y. Gen. Mun. L. §§ 50-e(1), 50-i(1); *see also Hardy*, 164 F.3d at 793. In their motion, Defendants argue that Plaintiff filed his notice of claim in December 2023, making it untimely. ECF No. 42 at 16-17. Defendants also submitted a copy of Plaintiff's notice of claim, which the Court may consider. ECF No. 41-2; *see also Arnold v. Town of Camillus*, New York, 662 F. Supp. 3d 245, 256 (N.D.N.Y. 2023) (holding a court may consider documents that are integral to the pleading).

Plaintiff's notice of claim shows that it was filed in December 2023. *See* ECF No. 41-2. Plaintiff neither mentioned the filing of a notice of claim in his complaint, *see* ECF No. 25, nor did he respond in opposition to Defendants' motion regarding timeliness of his notice of claim. As such, Plaintiff has failed to meet his burden to show that he complied with the notice of claim time requirements, and so this Court GRANTS Defendant's motion to dismiss Plaintiff's state law claims of assault, battery, and infliction of emotional distress.[4]

### B. Exhaustion of Administrative Remedies

Defendants argue that the amended complaint should be dismissed in its entirety due to Plaintiff's failure to exhaust his administrative remedies. ECF No. 42 at 8. Specifically, they argue that "non-exhaustion is clear from the face of the complaint." *Id.* at 9. The Court disagrees.

The Prison Litigation Reform Act ("PLRA") requires a "prisoner confined in any jail, prison, or other correctional facility" to exhaust all available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 578 U.S. 632 (2016) (holding that exhaustion is "mandatory"). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether

---

[4] Because this Court is dismissing the assault, battery, and infliction of emotional distress on notice of claim grounds, the Court need not address Defendants' further arguments (ECF No. 42 at 18-21) in support of dismissal of those claims.

they allege excessive force or some other wrong.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Like a convicted prisoner, "a pre-trial detainee is also generally required to exhaust his administrative remedies before filing an action in federal court." *Perez v. Ponte*, 236 F. Supp. 3d 590, 604 (E.D.N.Y. 2017), *report and recommendation adopted*, No. 16-CV-645 (JFB)(AKT), 2017 WL 1050109 (E.D.N.Y. Mar. 15, 2017). A prisoner must utilize the available grievance procedures, "regardless of whether the relief sought is offered through those procedures." *Espinal*, 558 F.3d at 124. Thus, to properly exhaust administrative remedies, a prisoner must use "all steps that the [government] agency holds out." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). He also must comply with the facility grievance "system's critical procedural rules," *Woodford*, 548 U.S. at 95, including time limits, *Hill v. Curcione*, 657 F.3d 116, 124 (2d Cir. 2011).

There is no question that the PLRA requirements apply in this case because Plaintiff was incarcerated when he filed the complaint, and he alleged that his Fourth and Fourteenth Amendment rights were violated while he was incarcerated. *See* ECF No. 25 at 3; *see also Espinal*, 558 F.3d at 124. However, prisoners "are not required to specially plead or demonstrate [administrative] exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Failure to exhaust is an affirmative defense under the PLRA, and, as such, Defendants bear the initial burden of establishing that a grievance process exists . . . ." *Brooks v. Mullen*, No. 14-CV-6690, 2020 WL 2512868, at *2 (W.D.N.Y. May 15, 2020). A court may dismiss a complaint under Rule 12(b)(6) if non-exhaustion is clear from the face of the complaint. *Williams v. Prianto*, 829 F.3d 118, 122 (2d Cir. 2016).

Here, Defendants met their burden to establish that a grievance process exists by citing to the grievance forms Plaintiff used at the Niagara County Jail and explaining the three-step grievance process. ECF No. 42 at 9-10. However, their argument that "[Plaintiff's] non-exhaustion is clear from the face of the complaint" falls short. In his complaint, Plaintiff checked the box marked "Yes" in response to whether he filed a grievance in the correctional facility where his claims arose. ECF No. 25 at 19. He claims that he filed his grievance with the Niagara County Jail; in this grievance he alleged that Officer Shawver made a false phone call and he requested that video be reviewed for excessive use of force. *Id.* at 19, 32. Further, he alleges in his complaint that the matter was never investigated, and his appeal was mishandled by Captain Wilt. *Id.* at 32. Specifically, he maintains that Officer Moren clearly told him that he had handed in his appeal. *Id.*

Thus, for the reasons discussed above, this Court concludes that Plaintiff's failure to exhaust is not, as Defendants claim, clear on the face of the complaint. As such, the Court DENIES Defendants' motion to dismiss on the basis that Plaintiff failed to exhaust his administrative remedies.

## C. Stating a Claim

Defendants argue that Plaintiff failed to state claims of excessive force and failure to intervene against the Defendants. ECF No. 42 at 12-15. The Court disagrees.

### i.    Excessive force claims

When a state pretrial detainee alleges excessive force, such claims are analyzed under the Due Process Clause of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 21 n.3 (2d Cir. 2017). "To establish a violation of the right to be free from excessive force, a pretrial detainee must show that the defendant purposely or knowingly used force against the detainee that was 'objectively unreasonable.'" *Abbas v. Tate*, No. 20-CV-3636 (JGK), 2022 WL 355401, at *4

(S.D.N.Y. Feb. 4, 2022) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)). In determining the reasonableness of the force used, Courts consider: "the relationship between the need for the use of force and the amount of force used[,] the extent of the plaintiff's injury[,] any effort made by the officer to temper or to limit the amount of force[,] the severity of the security problem at issue[,] the threat reasonably perceived by the officer[,] and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. The Court must also "take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." *Id.* at 399-400.

Here, Defendants Liver Good, Tooke, Smith, and Staley argue that under these circumstances, they used an objectively reasonable amount of force because Plaintiff was resisting. ECF No. 42 at 14. Specifically, these Defendants characterize Plaintiff's complaint as alleging that (1) when Plaintiff was told he would have to move cells, he tried to argue his case rather than comply with the officers' commands, *id.* at 13; (2) Plaintiff held his hands in front of his body rather than putting them behind his back for handcuffing, *id.*; and (3) Plaintiff admitted to struggling with the officers,[5] *id.* The Court disagrees with this characterization. Plaintiff's complaint does not indicate that he tried to argue his case or struggled with the officers. See ECF No. 25 at 7. At most, it notes that he "placed [his] hands in front of [him]" after he heard Weaver tell an officer to handcuff him. *Id.* Even if the Court were to credit Defendants' characterization of Plaintiff's allegations, Defendants raise no arguments as to how the force used—pepper spray to

---

[5] Defendants also argue that the pepper spray was used on Plaintiff in "one short burst" followed by "a second short burst." ECF No. 42 at 14. Defendants' characterization is not based on facts in the complaint, and thus, the Court disregards. *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (explaining that in a motion to dismiss for failure to state a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor).

Plaintiff's eyes and face; full body weight on his head and neck; bending of legs, feet, arms, and wrist; punches to ribs; and "excessive[ly] [tight]" full body restraints and handcuffs (ECF No. 25 at 7)—was objectively reasonable while Plaintiff was face down on the ground and not resisting. *See* ECF No. 42. Because these Defendants have raised no arguments as to why such force was objectively reasonable after Plaintiff stopped resisting, the Court concludes that dismissal is not warranted on the basis that the force used was objectively reasonable due to Plaintiff's resistance. Thus, the Court DENIES Defendants' motion to dismiss the excessive force claims for failure to state a claim.

### ii.      Failure to Intervene

Defendants Liver Good, Tooke, Smith, and Staley argue that because Plaintiff identified them as having engaged in excessive force, they cannot also be held liable for the claim of failure to intervene.[6] ECF No. 42 at 15. The Court is not persuaded by this argument.

An officer can be liable for failure to intercede when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Buari v. City of New York*, 530 F. Supp. 3d 356, 392 (S.D.N.Y. 2021) (quoting *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)). "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). While an officer cannot be held liable on a failure to intervene theory if he participates directly in the violation, *Buari*, 530 F. Supp. 3d at 392, Courts

---

[6] Defendants also argue that because Plaintiff did not plausibly allege a claim for excessive use of force against Liver Good, Tooke, Smith, and Staley for excessive force, then the claim of failure to intervene by Latona, Mendola, Shawver, and Weaver must be dismissed. This argument fails because, as the Court discussed above, Plaintiff has sufficiently stated a claim for excessive force.

10

have allowed excessive force and failure to intervene claims to proceed as alternative theories. *See Williams v. DiPuccio*, No. 19-CV-995 (BKS/MJK), 2024 WL 1765558, at *3 (N.D.N.Y. Apr. 24, 2024). "Federal Rule of Civil Procedure 8(d) supports this outcome by recognizing that claims may be brought in the alternative, even if they are inconsistent." *Id.*; *see* Fed. R. Civ. P. 8(d)(2), (3).

Here, Plaintiff's complaint suggests, at the very least, that some officers were watching as others engaged in excessive force and, in addition, that officers who were engaged in excessive force may have had the opportunity to intervene at other times. ECF No. 25 at 7-8. In any event, courts in this Circuit have routinely allowed excessive force and failure to intervene claims to proceed in the alternative even beyond the summary judgment stage. *See Williams*, 2024 WL 1765558, at *3; *Franco v. City of Syracuse*, No. 16-CV-634 (FJS/TWD), 2019 WL 1410348, at *4 (N.D.N.Y. Mar. 28, 2019). Therefore, the Court concludes that it would be premature to dismiss the failure to intervene claims against the Defendants also accused of excessive force on this basis and thus, Defendants' motion is DENIED.

### D. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because Plaintiff has not sufficiently alleged facts which make it plausible that the affirmative defense of qualified immunity does not apply. ECF No. 42 at 21. Specifically, Defendants state that "[Plaintiff's] allegations contained in the amended complaint do not substantiate a theory that any of the [] Defendants violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 21-22. The Court rejects this argument.

By presenting their "immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment[, the defendants] must accept the more stringent standard applicable to this

procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). The Court "accept[s] the complaint's factual allegations as true and draw[s] all reasonable inferences in the plaintiff['s] favor, including both those that support the claim and those that defeat the immunity defense." *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) (internal quotation marks omitted). "The defense will succeed only where entitlement to qualified immunity can be established based solely on facts appearing on the face of the complaint." *Smith v. Arrowood*, No. 21-CV-6318, 2022 WL 3927884, at *8 (W.D.N.Y. Aug. 31, 2022) (internal quotation marks and alterations omitted).

Here, Plaintiff alleges that while he was on the ground and not resisting, Defendants (1) put their full body weight on his head and neck; (2) pepper sprayed him in the eyes and face; (3) punched him in the ribs; (4) bent his legs, feet, arms, and wrist to try to break them; (5) and put him in excessively tight handcuffs and restraints. See ECF No. 25 at 7, 12. Taking Plaintiff's allegations as true, it is clearly established law that such actions violate a plaintiff's constitutional rights. *See Adilovic v. County. of Westchester,* No. 08-CV-10971 (PGG), 2011 WL 2893101, at *6 n.12 (S.D.N.Y. July 14, 2011) (noting that "[t]he use of pepper spray . . . can amount to an excessive use of force"); *see also Frost v. N.Y.C. Police Dep't,* 980 F.3d 231, 257 (2d Cir. 2020) ("an officer cannot strike an individual who is compliant and does not pose an imminent risk of harm to others"); *Lynch ex rel. Lynch v. City of Mount Vernon,* 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (collecting cases where courts in the Second Circuit have held "overly tight handcuffing" could constitute excessive force).

Accordingly, the Court denies Defendants' motion to dismiss on qualified immunity grounds.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 41, is GRANTED IN PART and DENIED IN PART. Plaintiff's state claims for assault, battery, and infliction of emotional distress are DISMISSED WITH PREJUDICE. Defendants shall answer Plaintiff's complaint as to the remaining claims by April 23, 2026.

IT IS SO ORDERED.

Dated:  March 23, 2026
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

13